CITY OF TUPELO *v.* PAYNE.

(Division A.   May 25, 1936.   Suggestion of Error Overruled Sept. 21, 1936.)

[168 So. 283.   No. 32243.]

Blair & Anderson, of Tupelo, for appellant.

Noel Monaghan, of Tupelo, for appellee.

McGowen, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Lee county in which the appellee, L. M. Payne, pro-

cured judgment for one thousand five hundred dollars against the city of Tupelo for alleged personal injuries.

On May 18, 1935, the city of Tupelo was engaged in constructing a swimming pool and a three-room building which contained lockers, toilets, and dressing rooms. This building consisted of one room to the north, one in the middle, and one on the south side. At the time that appellee was injured, the building in question was being constructed by carpenters, cement workers, plumbers, and electricians. Payne described himself as a "roustabout," and performed any work assigned to him by the foreman; he helped dig ditches, assisted the carpenters by handing them lumber and by moving lumber from point to point in the house that was being constructed. He was a direct employee of the ERA, a government agency, which had instructed him to report to Bolton, a foreman of the city of Tupelo, for work under his orders. On the day appellee was injured, the partition wall between the north and the middle room had not been constructed, but the studding had been put in place by the carpenters. Lumber was stacked on the south side of the north room against these studdings, and Payne was ordered by his foreman to go in and assist in removing this lumber, so that the carpenters could complete their work. About an hour before the appellee began this particular work of removing the lumber, one of the carpenters had knocked one of the studdings loose at the top so that he could complete ceiling this room; the joist or studding did not fall, evidently being supported by the stack of lumber against it. When the carpenter finished the ceiling, he went to another part of the building, where he continued his work.

After Payne, assisted by another employee, had removed a part of the lumber, this studding that had been knocked loose at the top fell and injured appellee's head to some extent, and one of his hands rather severely. Payne was directed by a different foreman than the one

immediately in charge of the carpentry work. The injury occurred while Payne was assisting the carpenters and others in the construction of a new building.

By his declaration and evidence the appellee sought to recover upon the principle of law that it is the nondelegable duty of a master to exercise reasonable care to furnish the servant a reasonably safe place in which to work. At the conclusion of all the evidence, the appellant requested a peremptory instruction, which was refused by the court.

Of the assignments of error here argued we will consider only one—the refusal of the peremptory instruction. In his effort to bring the case within the rule of a safe place to work, the appellee argues that, because he was not a carpenter and because he performed duties, in and about this work, different from those who took a more direct part in the construction of the building, and because he worked under a different foreman, therefore his case is within the rule upon which the suit is predicated. He says that the piece of studding loosened at the top was in a dangerous position, that such danger was known to the carpenter who struck it with a sledge hammer, and it was either the duty of the city to have this piece of studding laid flat on the floor or to give warning to the servants of the position of the studding. To support his contention he cites Mississippi Cotton Oil Company v. Ellis, 72 Miss. 191, 17 So. 214; Coast Ship Co. v. Yeager, 120 Miss. 152, 81 So. 797; Benton v. Finkbine Lumber Co., 118 Miss. 558, 79 So. 346; Edwards v. Hanyes-Walker Lumber Co., 113 Miss. 378, 74 So. 284; Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916; Belzoni Hardwood Lumber Co. v. Langford, 127 Miss. 234, 89 So. 919, 18 A. L. R. 1406.

Appellee relies most strongly upon the case of Coast Ship Co. v. Yeager, supra. The difference between the case at bar and that case is that the party there was injured by an auger, operated from the outside, piercing the side of a ship and injuring appellee, who was work-

ing on the inside of the ship. In that case the court held that the master was negligent, in that he did not promulgate a set of rules for that operation. There is no contention here as to rules. It is difficult to perceive how effective rules could be promulgated for this constantly shifting construction. The evidence is that neither the injured servant here, nor the master, the foreman of the carpenters, nor the servant's immediate foreman knew that the carpenter had loosened the studding and had not seen that it was supported by the pile of lumber which was to be removed by the appellee and his fellow workman.

This case falls squarely within the rule announced in Gulf, Mobile & Northern Railroad Co. v. Brown, 143 Miss. 890, 108 So. 503, 504, wherein the court said: "Appellant's position is that the obligation of the master to furnish his servant a reasonably safe place to work has no application to the facts of this case because appellee was employed, with others, to repair and make the very place safe, the unsafety of which caused his injury; that therefore he knew the place was unsafe and assumed the risk of such unsafety. The rule requiring the master to use ordinary care to provide a reasonably safe place for his servant to work is not applicable to a case in which the very work which the servant is employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards arising thus are regarded as being the ordinary dangers and risks of the employment which are assumed by the servant when he accepts the employment. 3 Labatt on Master and Servant, sec. 1176, p. 3140; Armour v. Hahn, 111 U. S. 313, 4 S. Ct. 433, 28 L. Ed. 440; Kentucky Coal Co. v. Nance, 165 F., 44, 91 C. C. A. 82; Jacques v. Miami Ice Co., 73 Fla. 1193, 75 So. 788; Waterman-Fouke Lumber Co. v. Miles, 135 Miss. 146, 99 So. 759; Cumberland Telephone Co. v. Cosnahan, 105 Miss. 615, 62 So. 824. In Kentucky Coal Co. v. Nance, supra, the court said: 'Manifestly,

this duty of providing a safe place is dependent upon the character of the work to be done there. Hence, when that work is one of construction, reconstruction, destruction, or repair, the risks which are incident to such places and kinds of work are assumed by the servants there employed.' "

The work in which this unfortunate man was engaged was that of a helper to the carpenters—all working together in the construction of the building. They all assumed the risks incident to such place and necessary in the work there being carried on. The moving of the lumber and the joist, which should have been knocked down, was as much a part of the construction of this building as the driving of a nail by a carpenter, or the plastering by the ceiling men, or other work there necessary to effectuate the completion of the building. There was no notice to the master, expressed or implied, upon which any negligence could be charged against him in this case. We are of the opinion that the court below erred in not granting the peremptory instruction requested by the appellant, and therefore the case will be reversed and judgment for the appellant will be entered here.

Reversed, and judgment here for appellant.