PITTMAN, Justice,
for the Court:
I.
Tony and Rhonda Young instituted this action against the City of Vicksburg seeking damages for an on-the-job injury received while Tony Young was employed with the Vicksburg Department of Parks and Recreation. Tony Young asked for $2,000,000.00 in damages for his past and future medical bills, past and future lost wages, and his past and future pain and *884 suffering. Rhonda Young sought $200,-000.00 in damages for her loss of the “benefits and pleasures” of her marriage to the injured Young.
The City of Vicksburg, electing not to carry worker’s compensation coverage, answered the plaintiffs’ suit alleging that Tony Young was the proximate cause of his injuries in that he was contributorily negligent and assumed the risk of his own behavior. The City asked that the complaint be dismissed at the plaintiffs’ cost.
On May 30, 1989, this matter came for trial in the Circuit Court of Warren County. More than two days later, the jury returned a verdict in favor of Tony Young awarding $185,528.00 in damages. The City of Vicksburg appeals this award and assigns the following errors:
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANT’S REQUESTED INSTRUCTIONS D-10 AND D-17 REGARDING THE FELLOW SERVANT DEFENSE?
II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANT’S REQUESTED INSTRUCTION D-19 REGARDING THE DUTY OF THE PLAINTIFF TO EXERCISE REASONABLE CARE FOR HIS SAFETY?
III. DID THE TRIAL COURT ERR IN ITS TREATMENT OF CONTRIBUTORY NEGLIGENCE IN THIS CASE IN THAT IT ALLOWED THE PLAINTIFF A PEREMPTORY INSTRUCTION ON THE ISSUE OF CONTRIBUTORY NEGLIGENCE AND REFUSED TO ALLOW DEFENDANT’S INSTRUCTION D-ll?
IV. DID THE TRIAL COURT ERR IN GRANTING THE PLAINTIFF’S REQUESTED INSTRUCTION P-6 THAT THE PLAINTIFF DID NOT ASSUME THE RISK AND HIS RECOVERY SHOULD NOT BE BARRED FOR THIS REASON?
V. DID THE TRIAL COURT ERR IN REFUSING DEFENDANT’S REQUESTED INSTRUCTION D-13 REGARDING THE ISSUE OF THE METHOD USED TO ACCOMPLISH THE ASSIGNED TASK AND WHETHER THE METHOD WAS DANGEROUS AND COMPLEX?
II.
On July 24, 1987, Tony Young was a member of the City of Vicksburg Parks and Recreation grass-cutting unit. That day, his crew was called upon to move a set of metal bleachers from the baseball field at Halls Ferry Park to the bicycle track several hundred yards away. The foreman, Earl Cosey, decided the bleachers could be pulled to the track if they were chained to a pick-up truck. When this procedure was employed, however, the truck was unable to gain traction due to the weight of the metal framed bleachers. Foreman Cosey, believing that more weight was needed on the rear part of the truck, told Tony Young and Perry Smith to position themselves on the back of the city’s Ford pick-up. The two men ultimately ended up on the vehicle’s rear bumper. With the truck gaining the necessary traction, the crew began to tow the stadium bleachers with foreman Cosey at the wheel of the truck. As Cosey reached speeds estimated between 10-25 miles per hour, it became apparent the bleachers were going to collide with a metal road sign and tree located between the baseball field and the BMX track. When this fact was made known to Earl Cosey, he suddenly applied the brakes to the pick-up causing the bleachers “in tow” to collide with the rear portion of the truck pinning the right leg of Tony Young. Young was taken to a local hospital where he received an immobilizing brace for his injured knee.
After several weeks with no improvement, Dr. Daniel Dare, an orthopedic surgeon, performed arthoscopic surgery on the right knee of Tony Young. Dr. Dare found that the cartilage surrounding the knee had been twisted from the joint surface exposing the underlying bone and gristle. The condition was not repairable so Dr. Dare removed the torn portions of the cartilage and prescribed physical therapy for Tony Young. Young did not improve as hoped.
In December of 1987, Tony Young instituted this action to recover for the injuries received. On May 30,1989, the cause came *885 for trial and the jury ultimately returned a verdict in favor of Tony Young for $185,-528.00. The jury awarded Rhonda Young no money in her consortium action. This appeal followed.
III.
DID THE COURT ERR IN REFUSING TO GRANT THE DEFENDANT’S REQUESTED INSTRUCTIONS D-10 AND D-17 REGARDING THE FELLOW SERVANT DEFENSE?
Jury instructions D-10 and D-17 would have instructed the jury on the principle (actually a defense to liability) known as the fellow-servant rule. Under this rule,
an employer is absolved from liability to one engaged in his employment for injuries incurred or suffered solely as the result of the negligence, carelessness, or misconduct of others who are in the service of the employer and who are engaged in the same common or general employment as the injured employee.
53 AmJur2d, Master and Servant, § 295 at 327 (1970). The rule does not apply, however, when the party causing injury is not a fellow laborer but is a supervisor or foreman performing managerial acts. The question under this first assignment of error, therefore, is whether Earl Cosey was acting as a supervisor or fellow-servant at the time of Tony Young’s injury.
In Strange v. Mercury Marine, Inc., 194 So.2d 208 (Miss.1967), a part-time supervisor and a marine mechanic were directed to test a watercraft for repair purposes. While the mechanic was positioning himself to ride in the boat, the part-time supervisor negligently raced the motor of the boat causing the mechanic to lose his footing and injure himself. In an action to recover damages against the employer, this Court addressed the applicability of the fellow-servant rule as follows:
The fellow-servant doctrine has only been abolished in Mississippi as to railroads etc. (Mississippi Code of 1942 Annotated section 7806) and as to those covered by the Workman’s Compensation Act when the employer fails to secure payment of compensation (Mississippi Code of 1942 Annotated section 6998-05). Neither of these statutes exclude the defense of fellow-servant doctrine in this particular instance.
Even conceding for the sake of argument that Johnny Franklin might at some times have supervisory power, that is not sufficient to establish liability here. As we stated in Harper v. Public Service Corporation of Mississippi, 170 Miss. 39, 154 So. 266 (1934), the doctrine of dual capacity is recognized in this State, and, under that the master is liable only for those acts of the foreman or superior agent which are official managerial acts — those done by him in the actual exercise of his supervisory authority, and not for those which pertain to the duties of a workman.
The master is not liable for acts done by the superior agent when engaged in the manual or operative work of a laborer — those acts of labor or fellow-service which belong to the details of the work and not to those duties which are non-delegable by the master. In this case, the act of [the part-time supervisor] was as a workman or fellow-servant and not in the exercise of supervisory or other official authority as foreman.
Strange, 194 So.2d at 210-11.
A second decision addressing the potential liability of an employer based upon the acts of his superior agent or foreman is Harper v. Public Service Corporation of Mississippi, 170 Miss. 39, 154 So. 266 (1934). In Harper, the plaintiff and several other workers were testing and making repairs to a high-pressure gas pipeline. Plaintiff, a laborer, was working at one end of the pipe while his foreman, working on the gas main, was at the other. Without warning, the foreman negligently turned the valve on the gas main while plaintiff’s face was near the open end of the pipe. The escaping gas released with such force that plaintiff received injuries to his face and eyes. In an action to recover damages against his employer, this Court discussed the application of the fellow-servant defense as follows:
*886 The proximate cause of the injury was the negligent act of the foreman in turning the lever or wrench at his end of the line, when he knew or ought to have known that appellant at the other end was probably not expecting this to be done at that time. The parties were only a short distance from each other; each was in the unobstructed view of the other; each could see what the other was doing. If therefore, the negligent act done by the foreman had been done by an ordinary laborer, there would clearly be no liability, as to the master, under the fellow-servant rule. The question is whether the fact that the negligent act was that of the foreman is sufficient to carry liability against the master.
[[Image here]]
Since the negligent act which was the proximate cause of the injury was an act of the foreman done then and there as a workman or fellow laborer, and not in the actual exercise of his official authority as foreman, it was obligatory upon the trial judge, under the settled rule in this state, to grant the peremptory charge, which he did.
Harper, 170 Miss. at 42-44, 154 So. at 266-267.
This Court cannot say that the lower court was in error in holding that the fellow-servant rule was inapplicable. There was ample evidence to support the conclusion that Earl Cosey was acting in a supervisory position when he ordered Young and Smith onto the rear bumper of the pickup truck. Moreover, it has been held that the fellow-servant defense is not available to an employer whose negligence concurs with that of the superior agent. At 53 AmJur2d, Master and Servant, § 299 at 329, the following is stated:
While it is a principle of the law of master and servant that an employee is not entitled to recover from his employer for injuries attributable solely to the negligence of a fellow servant engaged in the common employment with the injured employee, it is an equally well-settled and generally recognized rule that if the negligence of the employer combines and concurs with the negligence of the fellow employee, and the acts of both thus contribute to produce the injury, the employer may be held liable — the contributory fault of the coemployee does not defeat the right of recovery that otherwise would exist.
Under the facts, the trial court could well have concluded that the City of Vicksburg was negligent in failing to provide adequate equipment and manpower to safely move the bleachers in question. Therefore, the city’s negligence, in combination with Cosey’s negligence, would prevent the application of the fellow-servant rule. This assignment of error lacks merit.
IV.
DID THE TRIAL COURT ERR IN ITS TREATMENT OF CONTRIBUTORY NEGLIGENCE IN THIS CASE IN THAT IT ALLOWED THE PLAINTIFF PEREMPTORY INSTRUCTIONS ON THE ISSUE OF CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF THE RISK? [1]
At the trial of this cause, the lower court instructed the jury that Tony Young, as a matter of law, was not contributorily negligent and did not assume the risk of his injuries. Those instructions provided as follows:
P-14
The Court instructs the Jury that Tony Young, as matter of law, was not con-tributorily negligent and should you find for the Plaintiff, you should not reduce the amount of your verdict, if any, for this reason.
P-6
The Court instructs the Jury that as a matter of law the Plaintiff, Tony Young, did not assume the risk and his recovery is not barred for that reason. The Court further instructs the Jury that should you find for the Plaintiff, and you should *887 not reduce the amount of your verdict, if any, in his favor because of this reason.
The City of Vicksburg asserted that the lower court erred when it granted the peremptory instructions. The City submits that under Miss.Code Ann. § 11-7-17 (1972) “[a]ll questions of negligence and contributory negligence shall be for the jury to determine.” The City maintains to grant a peremptory instruction in a case such as this one, containing conflicting evidence on the issue of contributory negligence, constitutes reversible error under Mississippi law.
But while there was conflicting testimony on the issue of whether Young was told to get onto the bumper or in the truck’s bed, the City of Vicksburg misses one crucial point. Even if Young climbed onto the bumper of the truck without having been told to do so, the supervisor saw he was there and still proceeded. The supervisor driving the truck knew Young and his coworker were on the truck’s bumper and could have told them to move into the truck bed. However, he did not, and proceeded to drive at an unsafe speed dragging the bleachers.
The negligence from which the injury resulted occurred when the supervisor proceeded at an unsafe speed knowing the men were on the bumper. As there were no disputed facts regarding that negligence, no contributory negligence or assumption of the risk instruction was necessary. See Turner v. Temple, 602 So.2d 817, 823 (Miss.1992), Copeland v. City of Jackson, 548 So.2d 970, 973 (Miss.1989), Hill v. Dunaway, 487 So.2d 807 (Miss.1986). As to the peremptory instructions granted Young on contributory negligence and assumption of the risk, no proof indicated that any potential negligence or assumption of the risk by Young led to the injury. Thus, the judge was correct in granting the instructions. Edwards v. Patrick, 469 So.2d 92, 95 (Miss.1985), Barkley v. Miller Transporters, Inc., 450 So.2d 416, 419 (Miss.1984).
V.
DID THE TRIAL COURT ERR IN REFUSING DEFENDANT’S REQUESTED INSTRUCTION D-13 REGARDING THE ISSUE OF THE METHOD USED TO ACCOMPLISH THE ASSIGNED TASK AND WHETHER THE METHOD WAS DANGEROUS AND COMPLEX?
At trial, the following instruction was refused by the lower court:
D-13
The Court instructs the jury that under the law of this State an employer is not required to promulgate rules and regulations for the carrying out of a task unless the task to be performed is both dangerous and complex. In other words, the plaintiff in order to establish that the Defendant, City of Vicksburg, was negligent in that it authorized or condoned the use of unsafe methods or procedures under the circumstances of this case, must prove by a preponderance of the evidence that the assigned task of moving the bleachers from the ball field to the BMX track at Halls Ferry Park was (1) dangerous and (2) complex. The Court further instructs the jury that “complex” should be interpreted in its practical sense and in the every day use of the word.
When the instruction was not given, the city claims that the jury proceeded without guidance on whether defendant was negligent in using the truck-chain method to move the bleachers.
Tony Young asserts that this assignment of error is without merit being both immaterial and irrelevant to the issues before the court. The trial judge expressed similar feelings when he refused to grant Instruction D-13 on grounds that it did not fit the facts of this cause. Suffice it to say that Tony Young and the lower court thought little of D-13.
On balance, this Court holds that Instruction D-13 was correctly refused as not applying to the facts of the case. There was no evidence presented below that moving bleachers by the truck-chain method *888 was complex or unreasonably dangerous when done without workers on the rear bumper of the vehicle. See Turner v. Temple, 602 So.2d 817, 823 (Miss.1992), Copeland v. City of Jackson, 548 So.2d 970, 973 (Miss.1989), Hill v. Dunaway, 487 So.2d 807 (Miss.1986). Further, the trial judge was correct in refusing the instruction because it could also confuse the jury regarding the issues and law relevant to the case. For these reasons, this assignment of error lacks merit.
CONCLUSION
This case is unusual in that the City of Vicksburg has removed itself from workers compensation coverage requirement. The result is a long delay in resolving the issue and possible neglect of desirable medical treatment and possibly additional cost.
Finding no error in the issues assigned, we affirm the trial court’s judgment for Tony Young against the City of Vicksburg.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, BANKS, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., dissents without separate written opinion.

. Combined issues Nos. II, III, IV.